MICHIGAN GREY IRON CASTINGS CO. v. COULSON.

1. APPEAL AND ERROR—TRIAL—EVIDENCE.
   Whether the trial judge was in error in striking out certain testimony, *held*, unnecessary to decide, where later the witness testified fully upon the subject.[1]

2. NEW TRIAL—GREAT WEIGHT OF EVIDENCE.
   Refusal of the trial judge to grant a new trial on the ground that the verdict was against the great weight of the evidence, *held*, justified by the record.[2]

3. SAME—NEWLY-DISCOVERED EVIDENCE—ABUSE OF DISCRETION.
   Refusal of the trial judge to grant a new trial on the ground of newly-discovered evidence, which the court found to be merely cumulative and not calculated to render a different result probable on a new trial, *held*, not to amount to an abuse of discretion.[3]

4. PARTIES—REAL PARTY IN INTEREST.
   Where negotiations in regard to a contract were conducted by plaintiff corporation's president, and payments thereon were made by its checks signed by him as president and general manager, defendant's objection that this action for damages for breach of said contract was not commenced by the real party in interest, in accordance with the provisions of 3 Comp. Laws 1915, § 12353, is not well taken.[4]

Error to Wayne; Lamb (Fred S.), J., presiding. Submitted December 2, 1924. (Docket No. 75.) Decided April 3, 1925.

Assumpsit by the Michigan Grey Iron Castings Company against Charles L. Coulson for breach of a contract for the purchase of land. Judgment for plaintiff. Defendant brings error. Affirmed.

[1]Appeal and Error, 4 C. J. § 2985; [2]New Trial, 29 Cyc. p. 825; [3]Id., 29 Cyc. p. 911; [4]Corporations, 14a C. J. § 2892.

*Frank W. Atkinson* (*Ormond F. Hunt,* of counsel), for appellant.

*Monaghan, Crowley, Reilley & Kellogg,* for appellee.

MOORE, J.   The claims of the parties to this litigation were so clearly stated by the trial judge in his charge to the jury that we quote from it as follows:

"The plaintiff claims that on or about the first day of January, or the first of January, 1920, being desirous to purchase lots near its plant in the city of Detroit, known as the Mayer property—we won't deal with any other property in this charge because that is all that is involved—that on or about that day the plaintiff entered into a contract with the defendant to use his best endeavor to get these lots on an agreed commission of five per cent. of the purchase price actually paid for the lots; that on or about January 8, 1920, the defendant represented to the plaintiff that the lots could be bought for $22,000 and no less; that he could get an option at that price for 90 days for $200; that the plaintiff agreed to take the lots at such price and gave the defendant its check for $200 (that was dated on the 9th); that before the option expired the plaintiff paid the agreed price of $22,000 and also paid the defendant the sum of $1,100 as his commission; that the plaintiff was subsequently led to believe that the defendant did not pay $22,000 for the property, but did pay $21,000 therefor; that, at the time of making the representations to the plaintiff, the defendant had already made arrangements not known to the plaintiff, whereby the amount actually to be paid to the owners of the lots was the sum of $21,000; that in so doing the defendant acted falsely and fraudulently to the injury and damage of the plaintiff and in violation of his contract, in the sum of $2,300, made up as follows: $900 claimed to have been overpaid on the lots, $1,100 commission and interest at the rate of five per cent., making $300, a total of $2,300 claimed by the plaintiff.   Now, I have said that is the claim of the plaintiff.   I am not stating facts.   The facts are for you to find from the testimony in the case.

"To the declaration filed in the case the defendant

pleads the general issue, and general issue, as you know, is a general denial of the claims on the part of the plaintiff, and places the burden on the plaintiff to establish the essential facts, or essential elements necessary to make up a case to justify a verdict.

"The defendant claims as to the facts:

"That he entered into this contract as alleged by the plaintiff; that he carried out his contract in every particular and in good faith; that he made known to the plaintiff at the time the option was taken and paid for, January 9, 1920, the fact that the option was then held by his father, Leonard M. Coulson; that it called for $22,000 for the lots; that he drafted the option between Mayer and his father and that it covered the whole deal as therein outlined; that unknown to him there was an agreement between Mayer and Leonard M. Coulson that if Leonard M. Coulson got a purchaser for all cash, Mayer was to pay Leonard M. Coulson $1,000; that at the time the option was taken up by the plaintiff, April 8, 1920, Mayer instructed the defendant to pay Leonard M. Coulson $1,000 out of the $22,000 and he did so; that he in no way profited by the fact of that payment to his father; and withheld nothing from his principal to his detriment, and that he is in no way liable.

"That in general constitutes the claim on the part of the defendant."

The defendant did not offer any requests to charge the jury. The judge submitted the case to the jury in a charge to which no exceptions were taken. The jury returned a verdict in favor of the plaintiff in the sum of $2,300, upon which a judgment was duly entered. A motion was made for a new trial, which was overruled. The case is brought into this court by writ of error.

It is the claim of counsel the case should be reversed:

(1) Because the court erred in granting the motion of counsel for the plaintiff to strike out the testimony of Leonard M. Coulson as to the offer of $1,000 commission if he obtained $22,000 for the property, in so far as such testimony contradicts the written instrument Exhibit 5.

(2) Because the verdict was against the weight of the law and the evidence.

(3) Because the court erred in overruling the motion for new trial on the ground of newly-discovered evidence.

We will dispose of these contentions in the order in which they were presented.

1. The defendant contends the testimony should not have been stricken out, while the other side contend the judge did right for the reason stated by him.

We think it unnecessary to decide the question because later the witness testified fully upon that subject. We quote:

"*Q.* Had you talked to him before you went over about your commission if you sold it?

"*A.* He told me if I—he only wanted, understand, six or eight thousand dollars down and the balance on time; and I said, 'What would you say if I got you all cash?'   He said, 'I will give you $1,000.'   When we went over to Charlie's office, the understanding between myself and Mr. Mayer was that if it was sold for $22,000 cash I would get $1,000.   *   *   *

"*Q.* How much were you to be paid if you sold on time?

"*A.* I don't know.

"*Q.* But you were to get $1,000 if you sold for cash?

"*A.* I was to get $1,000 if I sold for cash."

2. In disposing of the motion for a new trial the judge expressed himself as of the opinion that the verdict of the jury was not against the great weight of the evidence, and a careful reading of this record satisfies us he was right in that conclusion.

3. Did the court err in declining to grant a new trial on the ground of newly-discovered evidence?   In support of the claim of newly-discovered evidence, several affidavits were filed, but the one upon which the most stress is laid is the one of Doctor Ransier, which is deemed of so much importance that it is

copied in full in the brief.   This affidavit relates to a letter the doctor says was shown him by Mr. Mayer, who stated it was from his wife.   Of course that statement would be hearsay and there is nothing in the affidavit to show that the doctor knew of his own knowledge from whom the letter came.

The trial judge was of the opinion, referring to all the affidavits:

"That said evidence is cumulative and is not calculated in my opinion to render a different result probable on a retrial of this cause."

We do not think there was any abuse of discretion shown.

Counsel argue the verdict should be set aside because it appeared upon the trial of said cause that said action was not commenced by the real party in interest, in accordance with the provisions of section 12353 of the Compiled Laws of 1915.

The record shows the negotiations were conducted by the president of the plaintiff company; that the payments were made by checks of the plaintiff company, "signed W. L. Coghlin, president and general manager."

Some of Mr. Coulson's testimony is as follows:

"I had no assignment; he was just simply trusting me and I trusted my father.   I knew I could trust him and that he would assign the option at any time I asked him to.   The three parties concerned, myself as agent, Mr. Coghlin of the Michigan Grey Iron Castings Company, and my father, understood that the Michigan Grey Iron Castings Company owned that option from January 9, 1920, until the time it was exercised.   I was not trying to sell the property to anybody else.   *   *   *

"I told Mr. Coghlin he could have that option, as long as I was trying to buy the other property and he ought to take it.   I was acting for my best interests and the interests of the Michigan Grey Iron Castings Company."

This point is not well taken.    The testimony was conflicting.    The case was carefully tried by able counsel and we discover no reversible error.

The judgment is affirmed, with costs to the appellee.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.